We'll hear argument next in Ruiz v. City of Bridgeport, 183493. Good morning. May it please the Court, my name is Josephine Miller, and I represent the appellant in this matter, Jesus Ruiz. This appeal has been taken on a very discreet issue, and that is whether or not the district court properly refused to grant a motion for partial summary judgment that was filed by the plaintiff over his termination as being an act of retaliation. Mr. Ruiz, at the time of this litigation in district court ---- Breyer, no, I may have misunderstood. I thought the issue was whether the district court erred in granting summary judgment for the defendant on that issue. You're suggesting that we should find that there is no issue of fact in this case at all, and that you are entitled to judgment as a matter of law that this was a retaliatory action? I am arguing both things, that district court should have granted our motion for partial summary judgment, and that it should not have granted summary judgment on the issue of retaliation to the defendants. Okay. So your argument is stronger or more demanding than simply that, although this would be a fallback position, that there should be at least a trial on the retaliation claim, but you're actually asking us to grant the judge, the authority of the district court, to grant judgment in your favor on that issue? Correct. On the issue of retaliation, as the Court knows, there are three principal issues that have to be presented. Number one, that the plaintiff in this case was involved in protected activity, and he clearly was. In this case, Mr. Ruiz had filed a complaint in Federal district court, and then was given a right-to-sue letter to then bring charges of Title VII violations. At the time of this litigation, my entrance into the litigation, there was a motion made to open the judgment, because it had, in fact, been — the case had been closed and remanded in part to the State court, where it had originally been removed from. What happened was that a — an evidentiary hearing was held before Judge Thompson on the issue of whether or not there had been a settlement between the parties. And that evidentiary hearing was held in October of 2016, full evidentiary hearing. Judge Thompson then decided that there was no valid settlement and that the plaintiff could proceed with his amendment to the complaint. And that was your position at the time? Correct. Judge Thompson issued that order on March 30th. We amended the complaint on April 1st, and five days later, we then had the defendants in the case to then issue a notice for a louder-mill hearing, at which they then said they're going to now seek termination of him on all of the pending employment issues. And only 13 days after the amendment of the complaint, Respondents or the defendants did exactly that. They terminated Mr. Ruiz. Clearly protected activity when he moved to amend his complaint. Here's my question. Isn't that exactly what you might have anticipated in arguing that the settlement did not exist? In other words, they offered to compromise this case. And they evidently thought that the compromise had been agreed to, but they were wrong. It hadn't been. So there was no compromise. So then everything returns to status quo ante, and they can do what they would otherwise do, and you do what you want to do, and we proceed to decide the case on the merits, right? Well, I would disagree with that, Your Honor. You're saying they are bound to, by the fact that they were willing to compromise on a lesser penalty, that this somehow limits the kind of penalties that they could later impose or argue in court were perfectly appropriate. We are arguing that but for Mr. Ruiz engaging in the protected activity of choosing to add Title VII discrimination and retaliation claims to his complaint, he would not have been terminated. Clearly, the defendants were contemplating discipline of some sort. But they, back in 2014, they had sent him a letter charging him with violating workplace rules, and a hearing was set up for March, and right before the hearing is when he filed his EEOC complaint, right? Correct. However, the issue is they had retreated from their position that termination was the discipline that was going to be sought. They retreated from that. They retreated from that by saying, and there are multiple admissions throughout the evidentiary hearing in federal court, as well as the documents that they presented, as well as their filings in the state court, where their position was as to all of the employment issues that were then pending, they were only going to seek demotion of Mr. Ruiz, and they were going to seek a suspension, and sending him back to the position of kennel worker. This was before the settlement, or that was part of the settlement? That was the settlement. Well, you can't have it both ways, though, right? So otherwise, so what you're saying is that plaintiffs can induce employers to enter into settlements that would result in less drastic conditions, then get out of that settlement agreement, but say that the employer is still bound by it, or that it's evidence of the employer's retaliatory intent. That's a neat trick. I think that we can't look simply at the manner in which the Court is looking at it. There were three-and-a-half years that elapsed between the time that they decided that they were going to engage in some discipline of him in which they kept him on administrative leave with pay. For three-and-a-half years, they took no action. But you're telling us that no good deed goes unpunished here, that their leniency in not pursuing immediate termination in the face of litigation somehow is a commitment that they believe that termination is inappropriate, which would be evidence that when they do seek termination, after he files an amended complaint, that that is in retaliation for the amended complaint rather than what they intended to do all along? Well, the position is that what their intent was is clearly shown in the admissions, the multiple admissions that they make. Well, when you say multiple admissions, can you identify for me in the record any place I can look to see the city acknowledging that termination is inappropriate or that termination is not part of the discipline they will seek that is outside the context of settlement negotiations? Well, in our motion for summary judgment, we did take the point out to the Court that the defendants admitted that the only reason why they decided to terminate him was because he elected not to settle on their terms. So the issue was clearly raised in the district court regarding their admissions as to what their intent was. Also in the motion for partial summary judgment, we pointed out at page 9 that the defendants readily acknowledged, even as of the time of that October 26th evidentiary hearing, that this is what they were seeking, not to terminate Mr. Ruiz, but rather to simply demote him. Can you tell me where I can find that in the record? In the record, it is found at page 9 of the motion for partial summary judgment. It is also clear that even after the defendant conducted their investigations of the performance issues with Mr. Ruiz, as well as the vehicle accident that he was not engaged in any further investigation after mid-2015, so that by the time they then decided, okay, we're going to now hold this Loudermill hearing, there was nothing new in the way of evidence. They simply relied on all that had gone on previously. And significantly, the agreement that they had reached was, or that they thought had been reached, was that that agreement to resolve the employment issues was to be with respect to any and all differences and disputes, whether known or unknown. They now would have this Court to believe that their thoughts about settling was solely with regard to the vehicle accident matter. Well, this language clearly refutes this. It shows that they were looking for a global settlement. And you've reserved three minutes for rebuttal. I'm sorry? You've reserved three minutes for rebuttal? I did. So we'll hear from your office. Go ahead. Good morning. May it please the Court, my name is John Mottola. I represent the city of Bridgeport, Thomas Austin and Stephen Lugow in this case. I think the best way to start here is to look at what the plaintiff has argued to this Court. The plaintiff is using the concepts of judicial estoppel and judicial admissions to support her claims on the retaliation claim. And the claim basically is that when, that the city retaliated against the plaintiff when it terminated his employment because he decided not to settle the present case, and several pending employment disciplinary issues, arguing that the settlement agreement, which the plaintiff disavowed later on, and that's clear in the record, only required the plaintiff to be suspended for two weeks without pay, and then demoted to animal control officer, from animal control officer to kennel keeper. And the plaintiff relies on these legal... When was the first time that this judicial estoppel argument was made? First time it was ever made was before this Court. It was never made before the district court, as well as the judicial admissions argument, Your Honor. And it's our position that it's not proper to make those arguments before this Court right now. Now, in our briefs, Your Honor, in case you do want to consider it, we did address those two particular issues. And as the Court well knows, judicial estoppel is a potential consequence of a conflict between two factual statements made by the same party. So when a party asserts, when a party assumes a certain position in a legal proceeding and succeeds in maintaining that, he can't later on, you know, assert the opposing position, especially if it prejudices the opposition. And that's the concept here. And the plaintiff's argument on the judicial estoppel, which wasn't raised before the district court, is a little confusing. The plaintiff cites to the companion state court case that was pending at the time. And just a little background here, and it's in the record, plaintiff had the district court case, but also had a case pending in the state superior court where the claim there was that the plaintiff was retaliated because the plaintiff filed a workers' compensation claim against the city of Bridgeport. And what the plaintiff argues to this Court as the basis of the judicial estoppel claim was that the defendant persuaded the trial court to dismiss the case, the state court case, because of its claim that a settlement agreement had been reached between the parties which resolved all claims brought by the plaintiff in both the state and Federal cases, and that the settlement agreement should be enforced. The argument is that the city of Bridgeport convinced the state court of that. That did not happen. That never happened. It's totally incorrect, and it's just simply not accurate. And if you look at the record that we provided, let me back up for a second. The record that the plaintiff provided to support that claim, there's no record to support that claim. They simply provided this Court with the state docket sheet that shows what happened. But just looking at that, you really can't tell what happened. So in order to be inclusive, in our record, we included the actual pleadings of what happened in the state court case. And if you go through it, in July of 2016, the plaintiff in the state court case wanted to modify the Court's scheduling order. And July 14, 2016, the city of Bridgeport objected to that. And we objected to it under the same grounds that we were seeking to enforce a settlement agreement before the district court. So we objected to that. And then what happened next is that on August 1, 2017, the plaintiff filed a response to our objection. And then what happened next, the very next day, if you look at the docket sheet, Judge Bellis of the state superior court dismissed the case on August 2, 2017. The record is unclear as to why the case was dismissed if you just look at the docket sheet. But if you look at the subsequent pleadings that were filed in that case, it seems  same thing that happened in the district court case. When we reached what I thought at the time was a settlement agreement in May of 2016 on all of these claims, we reported that to the Federal court, the district court, which is appropriate, and also to the state court. And generally under the rules in the state court, if you report a case settled, if it's not actually withdrawn within, I think it's 60 days, 45 to 60 days, the court will administratively dismiss it. And that's what appeared to have happened here. But what happens next is that the plaintiff files a motion to reconsider the dismissal in the state court case on August 13, 2016, and doesn't pursue that motion, and then waits eight months to do anything else, and then files with the state court on April 3, 2018, a memorandum in support of motion to open and vacate order of dismissal. State court case said you're too late. Under the Connecticut practice book, in order to move to vacate an order of dismissal, you have to move within four months. So that's the reason why the state court case was dismissed. It had nothing to do with the city of Bridgeport convincing the superior court judge that there was a settlement agreement that should be enforced. And that's what happened. And so the whole — Can I ask a question? Sure. A chronological question. Yes. Back in 2014, a letter was sent to Mr. Ruiz charging him with violating certain rules based on this dog incident. And a hearing, a disciplinary hearing is set up for March of 2014. In the interim, Mr. Ruiz files a complaint with the Connecticut Commission on Human Rights, correct? I believe that's correct, Your Honor. All right. And so the disciplinary hearing that was set for March of 2014, was that — was termination on the table at that point? Well, not — maybe not yet, Your Honor, because I think if you look at totality of the whole case, even after that, there were some other things that he engaged in. For example — Some other performance issues. Other performance issues thereafter. In October, he's got this car accident, right? October of 2014, he has the motor vehicle accident. And there's a hearing in November of 2014. There is a hearing on that. And we admit — That hearing is about termination? It's a termination? That hearing is about discipline. That includes termination. It could include termination. There was no decision made with respect to whether or not to terminate. And the defendants understand that there were some delays in this matter. But the district court looked at that and said those were legitimate explanations with respect to, you know, why it took a while to eventually discipline. Could I just get back to sort of — Sure. I think along the same lines Judge Sullivan is going. When a notice of hearing is sent regarding discipline, did this one say — before I ask whether it's typical — did this one say, we're seeking to have a hearing and the goal is to terminate you? No, it wouldn't say that. It would just say — and Judge did say in this case we're going to inquire into — you're being charged with violations of rules. Correct. And — The sentence comes later, not before the — Exactly. — the hearing. There's no determination by the charging body that says this is the goal. The most we're going to do to you is suspend you, but here's why. And then you can contest that. It just says we think you did these things wrong. Then there's a hearing. And at the end of the hearing, one of the issues, if there's an adjudication of misconduct, is what the penalties are. Exactly. And the one who's conducting the hearing wants to hear what the employee has to say. And all that goes to, you know, what type of any discipline is issued, if any. Determination is an option. It could be an option, depending on how, obviously, serious the matter is. So that's — So, Mike, I guess the bottom line is you didn't unilaterally withdraw termination as a penalty. Absolutely not. There's nothing in the record that shows that. And so any discussion of lesser sanctions was in the context of settlement. Yes. Is that correct? It is. And then one other point. I see I'm running out of time. The judicial omission aspect of this particular case, what the plaintiff relies on, the plaintiff says that the defendants made judicial omissions at the evidentiary hearing on whether or not to enforce the settlement agreement. Those weren't judicial omissions. That's evidence of what happened on that May 3, 2016 day, when the city of Bridgewood believed they had a settlement agreement. Those aren't judicial omissions. Thank you very much. Thank you very much. Your Honors, it is our position that, indeed, the testimony given by counsel, as well as his labor relations counsel, who also testified at that October 2016 evidentiary hearing, were, indeed, judicial omissions, because they addressed. Did you make this argument about judicial estoppel to the district court or to any other judicial body? Not the judicial estoppel, but it is our position that we did make the argument about omissions based upon the language that appears multiple times in our motion for partial summary judgment. Now, what do you do with Rule 410 of the Federal Rules of Evidence? Rule 410a4 says, In a civil or criminal case, evidence of the following is not admissible against the defendant who participated in plea discussions. And item 4 is a statement made during plea discussions with an attorney for the defendant who did not result. Well, that's a guilty plea. But isn't this a case of settlement discussions? I understand the policy reasons upon which Rule 410 is premised. However, we think that this is. That's only about plea discussions. It's not the doesn't cover settlement in civil cases. What I was going to say is that I think that this is a different set of circumstances, because not only do we have counsel making the assertion of the fact of a settlement, they literally came in and testified about the fact of the settlement, the circumstances of the settlement, they introduced the evidence of the release that was to be signed, and they took the position that this is what the parties intended as discipline. I take it, or I took it, that your argument was if one side uses it as a sword, the other side is then also able to use it, notwithstanding the provision of the 410. Well, they came in in multiple instances, and in my estimation, throughout the window, 410, because they came in and attempted to use it to say this is what we intended to do. But that's the argument. The argument is this is what the settlement was going to be, and your argument was no, it wasn't. Okay. But I think there's a distinction. Why aren't you bound by a judicial admission that this was never intended by anybody? Correct. But our position is that the admissions made by counsel when he testified, as well as when he introduced the settlement agreement, was to say this is the intent as far as discipline to be taken. Keeping in mind that three and a half years had gone by when they took no disciplinary action whatsoever, and then only chose to take that action 13 days after Mr. Ruiz engaged in the protected activity. Keep in mind also that there was no additional investigation done. There was nothing new that was brought up, and the notice that went out to Mr. Ruiz was with regard to Loudermill, which is collective bargaining, not Title VII issues. Collective bargaining issues are totally distinct, and there's case law that we cited for that proposition. There was nothing new that happened in the interim between the multiple hearings that had taken place back in early 2014 on the performance issues and nothing new that had occurred in the way of evidence on the vehicle accident matter. Thank you. Thank you very much. We'll reserve decision. Just for the record, I have the wrong rule. I should have been referring to 408, which is the one that deals with civil compromises. You're a former federal criminal prosecutor. Yes. We'll hear argument. We'll reserve decision as to Ruiz v. City of Bridgeport. We'll hear argument.